ALCORN COUNTY v. TUSCUMBIA DRAINAGE DISTRICT.

[59 South. 798.]

EQUITY. *Consent. Decree. Bill of review.*

Where a county consented to a decree, and afterwards discovered that it was mistaken as to the law and sought to correct its mistake by a bill of review, a decree sustaining a demurrer and dismissing the bill was proper.

APPEAL from the chancery court of Alcorn county Hon. T. D. YOUNG, Special Chancellor.

Suit by Alcorn county against the Tuscumbia Drainage District. From a decree sustaining a demurrer to the bill and dismissing the same, complainants appeal.

The facts are fully stated in the opinion of the court.

*Bennett & Sweat,* for appellant.

The bill which is filed by the appellant in this case is in the nature of a bill of review. The first question, then, to be considered is the right of the appellant under the law to file this bill.

102 Miss.—26.

In 16 Cyc. 526, it is said: ''A bill of review will lie for error of law apparent on the face of the record.'' Now, the facts in this case as set up by the bill shows that the assessment made by the drainage commissioners against the county under section 1721 of the Code of 1906, which section has by this court (*Board of Supervisors of Holmes County* v. *Black Creek Drainage District,* 55 So. 593) been held to be unconstitutional, is certainly, in our judgment, error of law which is quite apparent on the face of this record.

In *Handy* v. *Cobb,* 44 Miss. 699, it was held that a bill of review would lie to vacate a decree entered against a married woman by which she was divested of title to her property after she had consented to arbitrate the matter, which arbitration had been had and on which the decree was entered, the court holding that she being incapacitated by disability of coverture to make the agreement, that the agreement was void and the decree entered thereon was an error of law apparent on the face of the record for which a bill of review would lie.

Now, our contention in regard to the board of supervisors is that they had no power to agree to the assessment which was made against them by the drainage commissioners, and that they were in relation to such assessment in a similar capacity to an infant or insane person, having only such powers as are expressly conferred on them by statute, or which are necessarily implied, and outside such powers, they are under disability, so to speak. *Jefferson County* v. *Grafton,* 74 Miss. 435.

The statute under which this assessment was attempted to be made being unconstitutional was absolutely null and void *ab inito* and had no binding force (8 Cyc. 768), and all acts done thereunder, or in pursuance thereof, are also null and void (8 Cyc. 769). That being true this assessment of six thousand dollars was absolutely void, and the fact that the chancery court approved the assessment could not give life to a dead thing. The

·chancery court in its decree had no vitalizing power and ·could not make a dead assessment alive.

The drainage commissioners, attempting ·to act under an unconstitutional statute, had no power to make this assessment; not a bit more than did the board of aldermen of the town of Corinth. The board of supervisors did not have the power itself to make the assessment in the manner in which it was made by the drainage commissioners. If the board of supervisors had had the power in itself to make this assessment, it would not have had the power to delegate this authority to the drainage commissioners, or to any other board. If it had no power to delegate authority which it has, it certainly can have no power to delegate authority which it has not. That being the case, an assessment made against the county could not be made binding· by the assent of the board of supervisors thereto.

The contention in the court below was that the board ·of supervisors having jurisdiction of the subject-matter, a decree rendered against the board, and to which it consented, made it binding. Section 170 of the Constitution gives the board of supervisors full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe.

In *Howe* v. *State,* 53 Miss. 59, it is said: "A board can do valid acts only as empowered by law." Although they had jurisdiction of the subject-matter, they could exercise their authority only as empowered by law. Not being empowered by law, they could not exercise such authority. If they could not exercise it themselves, we cannot see by what process of reasoning the appellee or the court arrived at the conclusion that they could circumvent the law by allowing some one else, or some other board, to do the thing which they could not do and then bind the county by consenting thereto. If this were true there would be no use to limit the powers of the board

of supervisors by law, for when such powers were denied to them, they could have some other tribunal do the thing which they were denied the right to do, and make it binding on the county by their consent.

In 11 Cyc. 549, it is said, "Where the county authorities are without power to issue warrants, they are without power to confess judgment." The decree that was rendered in this cause made the assessment no more binding than it was before.

We call the court's attention to the language of the decree: "The difference with the board of supervisors over the assessment of the benefits to the county roads were in open court adjusted by the parties and are not passed on, but the assessment of the benefits to the county roads crossing the drainage district at six thousand dollars above any consequent damage is approved, that being the settlement agreed on by the parties in open court." You will notice from the record that it is said that this is not passed on, but that the assessment is approved.

Now, our contention is, as stated above, that the simple approval of the assessment by the chancery court could not give life to a thing which was void; and we call the court's further attention to the fact that after this decree was entered, an amended assessment was made by the drainage commissioners, assessing each road separately, making a total of six thousand dollars. This assessment was to all intents and purposes a new assessment by the drainage commissioners and this assessment was void *ab inito*, as stated above. The drainage commissioners had no more power to make an assessment against Alcorn county than did the board of aldermen of the city of Corinth.

Suppose, for example, that the board of aldermen of the city of Corinth had levied a tax against Alcorn county of six thousand dollars for benefits to roads (or streets), and the board, believing that the board of al-

dermen had such power, had consented to such assess
ment and the said assessment had been brought 'before
the chancery court and approved by the chancery court,
would it be contended that that assessment was binding?
Rather, on the other hand, would it not be apparent that
the assessment was void, notwithstanding the fact that
it had been consented to by the board of supervisors and
approved by the chancery court? The appellee is in no
better position than the city of Corinth would have been
in under such circumstances.

But with reference to the twelve hundred dollars which
was paid by the order of the board of supervisors on
this assessment. What right have we to recover this
amount? This money was paid appellee on an illegal
and void assessment, and was therefore an illegal pay-
ment of the money of the county by the board, and for
that reason does not rightfully belong to the appellee,
and the appellee should be compelled to cover the same
back to the county. "A court of equity has power to
compel the restoration of unlawful appropriations." 11
Cyc. 513.

The court, speaking through Justice CAMPBELL in
Howe v. State, said: "The board of supervisors has no
right to appropriate the money of the county to any
object not authorized by law. Such appropriation is
void. It confers no rights, and affords no protection to
the person receiving it. It matters not whether its ac-
tion in such matters be regarded as judicial, legislative,
or ministerial. Excess of authority in either capacity
is simply void. The board of supervisors is invested
with 'full jurisdiction over roads, ferries, and bridges,
and shall perform such other duties as shall be provided
by law.' Const., art. 6, sec. 20. They can do valid acts,
only as empowered by law." Howe v. State, 53 Miss.
69.

Our contention is that the payment of this twelve hun-
dred dollars by the board to the appellee on a void as-

sessment was an unlawful appropriation of the county's money, and that the courts will not protect the appellee in its retention, but will direct it to be paid back to the county whence it was illegally taken. We think that the above quotation from the Howe case exactly covers this case, both as to the assessment and the payment of the twelve hundred dollars. "Excess of authority in either capacity is simply void." The board exceeded its authority in consenting to the assessment and in paying the twelve hundred dollars thereon. According to the above authority that action is void and the same affords no protection to the appellee.

We will concede that if this assessment had been made against and the money paid by an individual instead of the county, that the money paid thereon probably could not be recovered, though we believe in that case that assessment would be declared to be void; but being a county the question presents an altogether different aspect, for the reason that the powers of the county board are strictly limited and clearly defined. Outside those limitations they are under disability, so to speak.

But it may be said that having consented to the assessment and voluntarily paid the money, the board is now estopped, and that the action if brought at all, should be by a taxpayer. Our answer to this is, if a taxpayer were contemplating a similar action it would be his duty to first call on the board of supervisors to institute the suit, and if the board refused, then proceed. See *Northern Trust Co. v. Snyder,* 89 N. W. 460. This board is the proper party to bring the suit. When section 1721 was declared unconstitutional it was the duty of the board, if a mistake had been made, to immediately proceed to rectify that mistake by taking such steps as might be necessary to rectify it, which it did by bringing this action.

*Thos. H. Johnston,* for appellee.

I think, that regardless of the question of whether or not there was error of law apparent upon the face of the record the demurrer should have been sustained. For the reason that the bill and the decree complained of show that the decree was a consent decree, that the board of supervisors consented thereto, and it is universally held that a bill of review will not be maintained to a consent decree for errors of law apparent upon the face of the record. 16 Cyc. 518; 3 Ency. Pl. & Pr., 572.

But appellant contends that the decree was not a consent decree because the board of supervisors were without authority to consent thereto. That they were without jurisdiction of the subject-matter in controversy and had no more authority to consent to the decree than the board of aldermen of the city of Corinth. If the board of supervisors were wholly without jurisdiction of the subject-matter about which the controversy arose, then I am free to admit that the decree is not a consent decree, for under such condition they would have no power to confess judgment.

The question then is, "Did the board of supervisors, in the premises, have the power or authority to consent to the decree complained of in the bill of review?"

The powers of the board of supervisors are either express or implied; in other words, the powers conferred upon them by the Constitution and the statutes, and the powers necessarily incident to or implied from such granted powers.

Sec. 170 of the Constitution provides that, "The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, etc." By the term full jurisdiction, I understand that the board of supervisors are given full power and authority over the subjects named; but this power and authority was to be exercised in accordance with such regulations as

the legislature might see fit to prescribe. This power given the legislature is permissive, if it sees fit to regulate the exercise of such power it can do so; but if it does not prescribe regulations for the exercise of such power, the board of supervisors are left free to act and to exercise the jurisdiction conferred upon them in conformity with the general law only.

The legislature in section 308, Code of 1906, confers the same authority upon the boards of supervisors as is granted them under the Constitution, in the following language, "The boards of supervisors shall have within their respective counties full jurisdiction over roads, highways, ferries, and bridges, etc." The legislature itself gives the board of supervisors full power and authority over public roads, etc., but in some instances it has seen fit to regulate the exercise of such powers in reference to certain phases of the subject-matter of such jurisdiction, such for instance as prescribing the width of all public roads, how they shall be laid out, worked, and maintained; providing for the building of causeways across the lowlands; building bridges, etc. And whenever the legislature has prescribed regulation for the exercise of this jurisdiction, the board of supervisors must act in accordance with such regulations; but where the legislature has not acted, the boards are left to exercise their jurisdiction over these subjects according to their best judgment so long as their acts do not conflict with the general law.

This court has frequently declared that the legislature has the right to regulate, but not to take away this jurisdiction. *Board* v. *Arrighi,* 54 Miss. 668; *Paxton* v. *Baum,* 59 Miss. 531; *Seal* v. *Donnelly,* 60 Miss. 658.

And in the case of *Holmes County* v. *Black Creek Drainage District,* 55 So. 593, by a divided court it was held that section 1721, Code of 1906, was unconstitutional for the reason that it deprived the board of supervisors of a part of its jurisdiction over public roads.

But the court intimated therein, that if the act had provided that the assessments for benefits to the public roads should be made by the drainage commissions with the approval of the board of supervisors, it would have been valid. Section 1721 having been held to be invalid, the board of supervisors, were left with their jurisdiction over public roads in this regard unimpaired, and as full and complete as though the legislature had never acted.

It is clear then that the legislature cannot directly take away the jurisdiction of the board of supervisors over roads, ferries, and bridges; but if appellant's contentions are correct the legislature, by refusing to prescribe any regulation whereby such jurisdiction may be exercised, can effectually deprive them of their power and authority over these subjects. It could do indirectly that which the law prohibits it from doing directly.

The Constitution granted the boards of supervisors full jurisdiction over roads, and were the legislature never to see fit to prescribe any rules for the exercise of this jurisdiction, other than as provided in section 307 of the Code as a necessary incident to, and implied from such granted power, the board would have the right and authority to lay out roads, improve, maintain them, build bridges, etc., and appropriate money to pay for the same. For the same reason I contend that the board of supervisors have the right to protect the public roads from overflow, by providing for drainage, and appropriate money to pay for the same.

It is contended by appellant that the board of supervisors is the creature of statute, and has only such powers as are conferred upon them by statute, or powers which are necessarily implied from such granted powers. The boards of supervisors of this state are created by the Constitution, and are granted certain powers thereunder, which the legislature cannot take from them by statute. And in addition to the constitutional grant of

powers, the legislature grants them full jurisdiction over roads, highways, etc.

But it is contended by appellant that the jurisdiction over public roads granted the boards of supervisors by the Constitution and by the legislature does not carry with it the implied power to protect the roads from overflow, and to issue a warrant to pay for the same. The direct power to have shade trees set out in the court house yard and to appropriate money to pay for the same was not granted the board of supervisors by the legislature either, but Judge CAMPBELL, in the case of *Allgood* v. *Hill,* 54 Miss. 666, held that the right of the board of supervisors to set out shade trees in the ground connected with the court house was fairly implied from the power granted the board to erect and maintain, or provide, a convenient court house, etc. What difference, in principle, can there be between a power to set out shade trees and appropriate money to pay for the same which is fairly implied from the granted power, and a power fairly implied to protect public roads from overflow, and to appropriate or provide for money to pay for the same, from a grant of full jurisdiction over roads?

It seems clear to me that the board of supervisors had the power to provide for the protection and betterment of the public roads, and where the legislature has not said how this shall be done, as it had not in this case, for the statute providing for the same has been declared unconstitutional, the board is left free to act of its own initiative. The drainage commissioners, in the proper court demand of the county nine thousand five hundred dollars for the benefits which will accrue to the public roads because of the construction of the proposed drainage canals, the board of supervisors, acting for the county, say that this is too much, but agree to six thousand dollars. The chancery court acts upon such agreement and this claim against the county is reduced to judgment, just as any other claim would be where the

board of supervisors had jurisdiction of the subject-matter as they undoubtedly had in this case.

Cook, J., delivered the opinion of the court.

The Tuscumbia Drainage District was organized under the provisions of chapter 39, Code 1906, and proceeded to assess the public roads of Alcorn county for benefits thereto which would be the result of the construction of the drainage ditches. The amount of the assessment fixed by the commissioners was nine thousand five hundred dollars. Upon the filing of the report of the commissioners, the board of supervisors objected to the amount of the assessment. When the case came on for hearing, no question was raised as to the power of the district to assess benefits to the public roads, and the chancellor was relieved of the duty of fixing the amount of benefits to be assessed, this being adjusted and agreed upon between the parties, and both parties consented to the decree to be entered, which was in the following words, to wit: "The differences with the board of supervisors over the assessment of the benefits to the county roads were in open court adjusted by the parties and are not passed on; but the assessment of the benefits to the county roads crossing the drainage district at six thousand dollars above any subsequent damage is approved, that being the settlement agreed on by the parties in open court." This decree was entered August 1, 1910.

September 6, 1911, a bill of review was filed by the county, alleging that the assessment of the public roads was void and of no effect, and asking that the decree be canceled. It is also alleged that the county had already paid twelve hundred dollars of the six thousand dollars assessed to the drainage district, and the bill seeks a recovery of this amount. To this bill the drainage district demurred, and from a decree sustaining the demurrer the county appeals.

We are of the opinion that the consent decree cannot be attacked and canceled by a bill of review. The county consented to the decree, and afterwards discovered that it was mistaken as to the law, and now seeks to correct its mistake. This cannot be done. The chancellor was correct, and his decree sustaining the demurrer is affirmed, and the bill dismissed. Standard Ency. Procedure, vol. 4, p. 433; *Ingles* v. *Bryant,* 117 Mich. 113, 75 N. W. 442.

*Decree affirmed and bill dismissed.*